UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Jeremy D. Mount, | Case No. 21-CV-1489 (NEB/ECW) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Warden J. Fikes, D. Drilling, and J. Best, | |
| Defendants. | |

This action comes before the Court on Plaintiff Jeremy D. Mount's Emergency Notice of Retaliation and Request for Temporary Restraining Order. (Dkt. 85.) This case has been referred to the undersigned United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

This Action arises out of Plaintiff Jeremy D. Mount's claims that the FCI-Sandstone mailroom staff Defendants J. Best and D. Drilling violated his constitutional rights related to his claimed right to mail and access to the court, and that Defendant Warden J. Fikes oversaw the administrative remedy in this regard. (Dkt. 78.) At the time of the Motion, Mount was incarcerated at FCI-Sandstone in Sandstone, Minnesota ("FCI-Sandstone"). Based on public records, it appears that Mount is presently incarcerated at Metropolitan Detention Center Correctional Institute-Brooklyn ("MDC- Brooklyn"), located in Brooklyn, New York. *See* Federal Bureau of Prisons Inmate Locator, https://www.bop.gov/inmateloc/ (last visited Aug. 25, 2022). It is unclear from the

record when Mount was transferred, although it was apparently after he filed a motion for a temporary restraining order ("TRO Motion") dated August 3, 2022 seeking to enjoin his anticipated transfer. (*See* Dkt. 85.)

## II.   ANALYSIS

Plaintiff has filed the following TRO Motion, which was dated August 3, 2022 and received by the Court on August 8, 2022:

> I Jeremy D. Mount, first being duly sworn to oath and writing in PRO SE and in necessity submit this EMERGENCY NOTICE OF RETALIATION AND REQUEST FOR TEMPORARY RESTRAINING ORDER informing the court that:
>
> Today at 12:30 PM being Wed. the Third of August. I was ordered down to R&D to ship out for transfer likely in the next week. I believe this is in retaliation for the court allowing my complaint against FCI Sandstone's Warden, Mailroom staff J. Best and D. Drilling to go forward.
>
> 1) I ask the Court to RESTRAIN the BOP FCI Sandstone prison from transferring me until I can have a hearing on this matter to establish this is not a retaliation action for filing a complaint on the Warden and the mail room staff.
> 2) I further request of the Court if I am shipped to know how to continue with the lawsuit with me out of this district.
> 3) If the Court declines the Temporary Restraining Order I request the court STAY this action until I have a chance to get settled with my records.
>
> \* \* \*
>
> It is my opinion that but for my assertion of the Constitutional violation of rights I filed on this prison staff, that I would not be getting transferred since I have had no prior write-ups! I am a MINIMUM risk to recidivate, I have no disciplinary issues and I have been housed here for the last 5 years without any prior problems.
>
> This is my closes [sic] place to my family and my release address.
> If I am moved from here I would no longer be able to visit with my children or my family that comes out to visit.

> Therefor [sic] this TRANSFER has no logical penological interest or purpose except to further the closure of an OPEN ACTION against the FCI Sandstone prison by their ability to retaliate and transfer me.

(Dkt. 85.)

Mount also submitted an Affidavit consistent with his TRO Motion, asserting he had been notified on August 3, 2022 that he was going to be transferred for unknown reasons and that he had never had any behavioral issues warranting transfer. (Dkt. 87 ¶¶ 5-6.) He also opined that the transfer was intended to sabotage his pending case before the Court. (*Id.* ¶ 7.)

Mount also filed a certificate of service, noting service upon the Court of the TRO Motion materials, however, there is no indication that any notice of the TRO Motion was provided by Mount to Defendants or any other interested parties. (Dkt. 89.) For the reasons discussed in an order that will contemporaneously issue with this Report and Recommendation, no Defendant has been served in this action and no attorney has entered any appearance for any Defendant.

**A.     TRO Motion**

To determine if a plaintiff is entitled to a TRO, a court considers: (1) the likelihood of success on the merits of a plaintiff's claims; (2) the threat of irreparable harm to Plaintiff; (3) the balance between that threat of harm and the injury that granting injunctive relief would inflict on other interested parties; and (4) whether the issuance of a TRO is in the public interest. *See Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981). No single factor is determinative, and all factors must be viewed in totality when a court decides if relief should be granted. *Id.* at 113. That said, "[s]uccess

on the merits has been referred to as the most important of the four factors." *Roudachevski v. All-Am. Care Centers, Inc.*, 648 F.3d 701, 706 (8th Cir. 2011) (citation omitted); *see also Mid-Am. Real Estate Co. v. Iowa Realty Co.*, 406 F.3d 969, 972 (8th Cir. 2005) ("[A]n injunction cannot issue if there is no chance of success on the merits.") (citations omitted). Granting emergency injunctive relief is "an extraordinary remedy and the burden of establishing the propriety of an injunction is on the movant." *Roudachevski*, 648 F.3d at 705.

As stated above, Defendants have not been served in the present case. Even assuming that Rule 65 authorizes the issuance of an *ex parte* TRO prior to the service of summons and complaint on Defendants (*see H-D Michigan, LLC v. Hellenic Duty Free Shops S.A.*, 694 F.3d 827, 842 (7th Cir. 2012)), the following requirements must be met:

> (1) Issuing Without Notice. The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:
>
> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1); *see also Gilmore v. Martin Cnty. Sheriff Dep't*, No. 19-CV-0141 (WMW/ECW), 2019 WL 3878090, at *3 (D. Minn. July 12, 2019), *R. & R. adopted*, 2019 WL 3859516 (D. Minn. Aug. 16, 2019); *Fryer v. Citimortgage, Inc.*, No. 09-cv-3197 (DWF/RLE), 2009 WL 3856724, at *1 (D. Minn. Nov. 17, 2009) (denying an *ex parte* motion for a TRO for failing meet the requirements of Rule 65(b)(1)). Here, Mount

4

has provided an affidavit in support of his TRO Motion. However, he has failed to provide any efforts to give notice to Defendants of the TRO Motion and why notice should not be required. The TRO should be denied on this basis alone.

More importantly, Plaintiff has not established that he is likely to succeed on the merits of his claims through his Affidavit. "Although a prisoner enjoys no constitutional right to remain in a particular institution, and although generally prison officials may transfer a prisoner for whatever reason or for no reason at all, a prisoner cannot be transferred in retaliation for the exercise of a constitutional right." *Goff v. Burton*, 7 F.3d 734, 737 (8th Cir. 1993) (marks and internal citations omitted). "In order to sustain a retaliation claim, a prisoner must show that the primary purpose of a defendant's alleged retaliatory actions was to punish the prisoner for attempting to exercise his constitutional rights." *Brooks v. Roy*, 881 F. Supp. 2d 1035, 1057 (D. Minn. 2012) (describing a "but for" standard necessary for a claim of retaliatory transfer); *see also Johnson v. Esry*, No. 98-2573, 2000 WL 375269, at *1 (8th Cir. 2000) (per curiam) ("To succeed on a claim of retaliatory transfer or retaliatory discipline, an inmate must prove that, but for an unconstitutional retaliatory motive, the transfer or discipline would not have occurred.") (citation omitted). Mere allegations that an official's conduct was retaliatory do not suffice to meet the plaintiff's burden to prove retaliation. *See Meuir v. Green Cty. Jail Employees*, 487 F.3d 1115, 1119 (8th Cir. 2007). Therefore, the prisoner must show that he would not have suffered the alleged retaliatory mistreatment at issue "but for" the defendant's retaliatory motive. *See Kind v. Frank*, 329 F.3d 979, 981 (8th Cir. 2003) (prisoner's retaliation claim was properly dismissed where he "failed to show that but for

his assertions of his constitutional rights, he would not have been transferred"); *Sisneros v. Nix*, 95 F.3d 749, 752 (8th Cir.1996) ("In a retaliatory transfer case, 'the burden is on the prisoner to prove that but for an unconstitutional, retaliatory motive the transfer would have not occurred.'") (quoting *Goff*, 7 F.3d at 738). Here, Mount has provided no evidence, except his own speculation, that he was transferred solely because "the court allow[ed]" his complaint against Defendants to "go forward"[1] (Dkt. 85 ¶ 1) and because he filed the Complaint in this action (*id.* at 2). However, he concedes that this action was initiated last year in June 2021 (Dkt. 87 ¶ 3), so it is unclear as to why the transfer would have occurred now in August 2022 based on the present case that had been ongoing for over a year. Mount does not explain how Defendants would know of any decision by the Court given that service has not yet been effectuated in this case. While Mount attests to being a model prisoner, there may be other legitimate penological interests for his transfer, as opposed to him being transferred because of the ongoing prosecution of these claims. For all of these reasons, the Court finds that Mount is not likely to succeed on the merits of his claim based on the current record.

The irreparable harm factor also favors denying the TRO Motion. "The threshold inquiry is whether the movant has shown the threat of irreparable injury." *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir. 1987). If "a court determines that the movant has failed to show irreparable harm absent an injunction, the inquiry is finished

---

[1] Mount also states the transfer comes at "a CRITICAL point in the outcome of the CIVIL ACTION." (Dkt. 85 at 1 n.2.) It is unclear to the Court which Order (or other event) Mount is referring to, making it difficult to determine that the transfer was retaliatory due to any particular Order or event.

and the denial of the injunctive request is warranted." *Id.* at 420 (citations omitted). "The failure to demonstrate irreparable harm is an independently sufficient ground to deny injunctive relief." *Jackson v. Macalester Coll.*, 169 F. Supp. 3d. 918, 921 (D. Minn. 2016) (citing *Watkins, Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003)).  This is because "'[t]he basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies.'" *Gelco*, 811 F.2d at 418 (quoting *Sampson v. Murray*, 415 U.S. 61, 88 (1974)) (internal quotation marks and citations omitted).

"The harm must be likely in the absence of an injunction, great, and of such imminence that there is a clear and present need for equitable relief." *Cambria Co. LLC v. Schumann*, No. 19-CV-3145 (NEB/TNL), 2020 WL 373599, at *7 (D. Minn. Jan. 23, 2020) (quoting *Midwest Sign & Screen Printing Supply Co. v. Dalpe*, 386 F. Supp. 3d 1037, 1055 (D. Minn. 2019)).  A claimant "must show more than a future risk of irreparable harm; 'there must be a clear showing of immediate irreparable injury.'" *Cambria*, 2020 WL 373599, at *7 (quoting *Berkley Risk Admins. Co., LLC v. Accident Fund Holdings, Inc.*, No. 16-CV-2671 (DSD/KMM), 2016 WL 4472943, at *4 (D. Minn. Aug. 24, 2016)) (cleaned up); *see also Iowa Utilities Bd. v. F.C.C.*, 109 F.3d 418, 425 (8th Cir. 1996) ("In order to demonstrate irreparable harm, a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief."). "Possible or speculative harm is not sufficient." *Anytime Fitness, Inc. v. Family Fitness of Royal, LLC*, No. 09-cv-3503 (DSD/JSM), 2010 WL 145259, at *2 (D. Minn. Jan. 8, 2010) (citing *Local Union No. 884, United Rubber, Cork, Linoleum, & Plastic Workers of Am. v. Bridgestone/Firestone, Inc.*, 61 F.3d 1347, 1355 (8th

Cir.1995))  Here, the only potential harms that this Court can discern are the harms to Mount's ability to prosecute the present action from his new facility and whether he will be able to see his family.  As to this legal action, the Court has no evidence that staff at the new facility will preclude him from having meaningful access to the Court, including his ability to prosecute this action.  Should this become an issue, the Court will consider valid requests for extensions.  As to his family, while Mount supplied pictures of his family (Dkt. 88), that is not evidence of whether they ever visited him at FCI-Sandstone.  In sum, this type of speculative harm does not warrant relief.

When a party seeks injunctive relief against the government, the balance of the equities and the public interest factors merge.  *See Nken v. Holder*, 556 U.S. 418, 435 (2009) (noting, in the context of a plaintiff's suit seeking a stay of removal proceedings, that the balance of equities and public interest "factors merge when the Government is the opposing party").  In the prison setting, a request for an injunction "must always be viewed with great caution because judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration." *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995) (internal quotation marks omitted).  This, coupled with the lack of concrete irreparable harm shown by Mount as the result of a transfer, leads the Court to find that these factors also weigh in favor of denying the TRO Motion at this time.

Given that Mount has not complied with Rule 65(b)(1), has not met his burden to show that he is likely to succeed on the merits of his claims, and has not demonstrated an irreparable harm, Mount's TRO Motion should be denied.

**B.      Request for a Stay**

As set forth previously, Mount asks the Court to stay this action if it denies the TRO Motion so he has "a chance to get settled with my records." (Dkt. 85 ¶ 3.) "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *see also Cottrell v. Duke*, 737 F.3d 1238, 1248 (8th Cir. 2013) (citations omitted). "A district court has broad discretion to stay proceedings when appropriate to control its docket." *Sierra Club v. U.S. Army Corps of Eng'rs*, 446 F.3d 808, 816 (8th Cir. 2006) (citation omitted). When determining whether to stay proceedings, "the Court considers relevant factors, including the conservation of judicial resources, maintaining control of the court's docket, providing for the just determination of cases, as well as the potential for duplicative efforts and wasted resources of the parties and hardship to the party opposing the stay." *Tovar v. Essentia Health*, 342 F. Supp. 3d 947, 956-57 (D. Minn. 2018) (citing *Edens v. Volkswagen Grp. of Am., Inc.*, Civ. No. 16-0750, 2016 WL 3004629, at *1-2 (D. Minn. May 24, 2016)). "The party requesting a stay bears the burden of establishing the need for a stay." *Id.*

A stay is not warranted at this time. Although the case has been ongoing since June 2021, the case is still in its early stages given that Plaintiff has not yet served Defendants. Moreover, the Court will be granting Mount an extension of time with respect to service in terms of providing the Court with a completed Form USM-285 in a separate order that will issue contemporaneously with this Report and Recommendation.

To the extent that Mount does not have the legal papers needed for service within the timeframe of the extension granted, he may file a good faith motion seeking additional time. Given that there are other remedies to deal with any deficiencies of any lag in receiving his legal papers as a part of the transfer, a wholesale stay of this case is unwarranted and should be denied.

### III.   RECOMMENDATION

Based on the above, and on the files, records, and proceedings herein, **IT IS RECOMMENDED** that:

1. Plaintiff Jeremy D. Mount's Emergency Notice of Retaliation and Request for Temporary Restraining Order (Dkt. 85) be **DENIED**; and

2. Plaintiff Jeremy D. Mount's alternative request for a stay (Dkt. 85) be **DENIED**.

DATED: August 25, 2022                     *s/ Elizabeth Cowan Wright*
                                           ELIZABETH COWAN WRIGHT
                                           United States Magistrate Judge

### NOTICE

This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under District of Minnesota Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. D. Minn. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in D. Minn. LR 72.2(c).