## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Jeremy D. Mount,                                    Case No. 21-cv-1489 (NEB/ECW)

        Plaintiff,

v.                                                          **REPORT AND RECOMMENDATION**

Warden J. Fikes, D. Drilling, and J. Best,

        Defendants.

---

This action comes before the Court on Defendants' Motion to Dismiss (Dkt. 108); Plaintiff Jeremy D. Mount's Motion for Partial Summary Judgment on Damages (Dkt. 117); and Plaintiff Jeremy D. Mount's Motion for Extension of Time to Seek "Offer of Compromise" Resolution Where Both Parties are Willing (Dkt. 121). This case has been referred to the undersigned United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

This action arises out of Plaintiff Jeremy D. Mount's ("Mount" or "Plaintiff") claims that Federal Correctional Institution - Sandstone ("FCI Sandstone") mailroom staff Defendants J. Best and D. Drilling violated his constitutional rights related to his claimed right to mail and access to the courts, and that Defendant Warden J. Fikes oversaw the administrative remedy in this regard. (Dkt. 78.) In particular, the operative Amended Complaint alleges as follows:

Mount resided at FCI Sandstone when he filed the Amended Complaint. (*Id.* ¶ 8.) Defendant Warden Fikes of FCI Sandstone was the warden when this action was filed and oversaw the "administrative rem[e]dy" that Mount submitted regarding allegedly unconstitutional acts of mailroom staff Defendants D. Drilling and J. Best. (*Id.* ¶ 11.) Defendant J. Best was working and overseeing the operations of the mailroom at FCI Sandstone, was in charge of how the mail was handled, and was most directly involved with the unconstitutional treatment of Mount by the mailroom. (*Id.* ¶ 12.) Defendant D. Drilling was also in charge of the mailroom procedures and allowed the unconstitutional actions against Mount to continue. (*Id.* ¶ 13.) Mount is suing Defendants in their individual and official capacities. (*Id.*)

Defendants have failed to follow Federal Bureau of Prisons ("BOP") procedures, "such as 540.71 Procedures (b)," which provides that the Warden may reject a publication only if it is determined detrimental to the security, good order, or discipline of the institution or if it might facilitate criminal activity. (*Id.* ¶ 14.) The Warden may not reject a publication solely because its content is religious, philosophical, political, social or sexual, or because its content is unpopular or repugnant. (*Id.*)

The mailroom also failed to follow procedures allowing Mount to "inspect" the rejected publication and would send back rejected publications even after an appeal was timely filed, which allegedly violated a procedure stating the Warden would retain rejected publications for 20 days after the inmate was sent written notice of the rejection. (*Id.* ¶ 15.) The rejected publications included books that were rejected for having an unknown substance, including a book from Mount's mother, and an "Art Deco" book that

was rejected on the grounds that it contained sexually explicit material or featured nudity. (*Id.* ¶¶ 15, 17-20; Dkt. 78-1, Ex. A.)  This was also in violation of the BOP Program Statement 5266.11.  (Dkt. 78 ¶ 18.)  Efforts to appeal and remedy these violations were ignored by the administrative remedy process at the district level.  (*Id.* ¶ 16.)

Plaintiff alleges that it is "more then obvious" and "it does not require a leap over a chasm of logic to conclude the mailroom staff had vexatious ends to their actions to block his constitutional rights to DUE PROCESS."  (*Id.* ¶ 21.)

Further evidence of D. Drilling and J. Best's malicious intents to stop the flow of mail against Mount included the constant and unrelenting rejection of federal mail postage stamps for no reason.  (*Id.* ¶¶ 22-23.)

When this action was filed, D. Drilling and J. Best were running the majority of mailroom activity and made the decisions regarding rejection of Federal Mail Stamps and rejection of books.  (*Id.* ¶ 27.)  Plaintiff had no other way to mail his packages and mail. (*Id.*)  Plaintiff also had no other way to receive books except from the mailroom that was being run by D. Drilling and J. Best.  (*Id.* ¶ 28.)

D. Drilling and J. Best rejected hundreds of Mount's letters that were properly stamped with Federal Forever postage stamps, thereby committing mail fraud by blocking the free flow of incoming and outgoing mail for no penological reason.  (*Id.* ¶ 29.)  While Plaintiff properly used the prison grievance process, Warden Fikes, the BOP Regional Office, and Central Office failed to address this issue.  (*Id.* ¶ 30.)

D. Drilling and J. Best further refused to cease blocking Plaintiff from receiving books from book clubs.  (*Id.* ¶ 31.)  They fabricated false pretenses to achieve their ends

by using the mailroom procedures relating to "unknown substance" to justify their false and malicious acts.  (*Id.*)

By refusing stamped envelopes, D. Drilling and J. Best stopped Mount from mailing religious mail, mail to loved ones, and even legal mail, which created a risk of having his legal mail be deemed untimely and thereby losing his legal claims.  (*Id.* ¶ 32.) These acts violated Mount's due process right of access to the courts and freedom of religion.  (*Id.*)  It also resulted in late mail to Mount's family.  (*Id.*)

D. Drilling and J. Best not only refused to cease their relentless attacks and practices on Mount, but when Mount attempted to remedy the misconduct with a face-to-face meeting with the Defendants, he was publicly disrespected and told to "shut the fuck up."  (*Id.* ¶ 34.)

Mount's Amended Complaint is brought under 42 U.S.C. § 1983 and seeks a declaratory judgment that Defendants' actions violated his right to due process under the Fourteenth Amendment and violated his First Amendment rights.  (*Id.* at 8.)  Mount also seeks injunctive relief relating to the FCI Sandstone mailroom conduct.  (*Id.* at 8-9.)

Mount further seeks compensatory and punitive damages.  (*Id.* at 9.)

**B.    Procedural Background**

Mount was committed to the custody of the BOP on August 22, 2017.  (Dkt. 110 ¶ 5; Dkt. 110-2.)  He was designated to FCI Sandstone from August 22, 2017 to August 2, 2021.  (*Id.*)  From August 2, 2021, to May 5, 2022, Mount was released from BOP custody on Federal Writ, and was returned to the BOP on May 5, 2022.  (*Id.*)  Mount was again designated to FCI Sandstone until August 10, 2022.  (*Id.*)  Following a period of

transit, he arrived at the Metropolitan Detention Center in Brooklyn, New York ("MDC Brooklyn"), in holdover for transfer to another institution on August 24, 2022.  As of December 6, 2022, he remained at MDC Brooklyn.  According to the last Notice of Change of Address from Mount (Dkt. 115), and the BOP's inmate locator, Mount is presently designated at the Federal Correctional Institute in Milan, Michigan.  *BOP inmate Locator*, www.bop.gov/inmateloc// (last visited April 4, 2023).

## II.    LEGAL STANDARD

Defendants bring the Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)—and specifically, under 12(b)(1) and 12(b)(6).  (Dkt. 108.)  Rule 12(b)(1) concerns claims that a court lacks subject matter jurisdiction over part or all of an action.  *Johnson v. United States*, 534 F.3d 958, 964 (8th Cir. 2008).  "Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute."  *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quotation marks and citations omitted).  As a result, subject matter jurisdiction "is a threshold requirement" that courts must assure themselves of "in every federal case."  *Turner v. Armontrout*, 922 F.2d 492, 493 (8th Cir. 1991) (citing *Kronholm v. F.D.I.C.*, 915 F.2d 1171, 1174 (8th Cir. 1990)).

When considering a Rule 12(b)(1) motion, "'the plaintiff will have the burden of proof that jurisdiction does in fact exist.'"  *Osborn v. United States*, 918 F.2d 724, 730 (8th Cir. 1990) (quoting *Mortenson v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3rd Cir. 1977)).

A court considering a Rule 12(b)(1) motion must first determine whether the motion presents a "facial attack" or a "factual attack."  *Id.* at 729 n.6 (quoting *Menchaca*

*v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)).  "In a facial challenge to jurisdiction, all of the factual allegations concerning jurisdiction are presumed to be true and the motion is successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction." *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993) (citing *Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 731-32 (11th Cir. 1982)).  For a factual attack, in contrast, a court "'considers matters outside the pleadings, and the non-moving party does not have the benefit of 12(b)(6) safeguards.'" *Davis v. Anthony, Inc.*, 886 F.3d 674, 679 (8th Cir. 2018) (quoting *Osborn*, 918 F.2d at 729 n.6)).  "If the asserted basis of federal jurisdiction is patently meritless, then dismissal for lack of jurisdiction is appropriate." *Biscanin v. Merrill Lynch & Co., Inc.*, 407 F.3d 905, 907 (8th Cir. 2005) (citing cases).

Motions to dismiss under Rule 12(b)(6) do not concern jurisdiction; instead, they assert that a plaintiff's pleadings "fail[] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  When considering a Rule 12(b)(6) motion, a court construes pleadings in the light most favorable to the nonmoving party, and the court must take a pleading's factual allegations to be true.  *See*, *e.g.*, *Ashley County v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009) (quoting *Wishnatsky v. Rovner*, 433 F.3d 608, 610 (8th Cir. 2006)).  Furthermore, a court must afford the nonmoving party all reasonable inferences from a pleading's allegations.  *See, e.g., Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 853 (8th Cir. 2010) (citing *Crooks v. Lynch*, 557 F.3d 846, 848 (8th Cir. 2009)).

Notwithstanding these points, to withstand a Rule 12(b)(6) motion, litigants must properly plead their claims under Federal Rule of Civil Procedure 8 and meet the principles articulated by the U.S. Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  Under Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  This standard "does not require detailed factual allegations, but [does demand] more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

As a result, to "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  "[T]he plausibility standard, which requires a federal court complaint 'to state a claim for relief that is plausible on its face, . . . asks for more than a sheer possibility that a defendant has acted unlawfully.'" *Ritchie v. St. Louis Jewish Light*, 630 F.3d 713, 717 (8th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678 (ellipses in *Ritchie*)).  "Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted).

Following *Twombly* (and proving consistent with *Iqbal*), the Eighth Circuit has provided further guidance on Rule 8's pleading standard:

> While a plaintiff need not set forth "detailed factual allegations," *Twombly*, [550 U.S. at 555], or "specific facts" that describe the evidence to be presented, *Erickson v. Pardus*, [551 U.S. 89, 93 (2007)] (per curiam), the complaint must include sufficient factual allegations to provide the grounds on which the claim rests. *Twombly*, [550 U.S. at 555 n.3]. A district court, therefore, is not required "to divine the litigant's intent and create claims that are not clearly raised," [*Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 840 (8th Cir. 2004)], and it need not "conjure up unpled allegations" to save a complaint. *Rios v. City of Del Rio*, 444 F.3d 417, 421 (5th Cir. 2006) (internal quotation omitted).

*Gregory v. Dillard's, Inc.*, 565 F.3d 464, 473 (8th Cir. 2009).

For Rule 12(b)(6) purposes, the Eighth Circuit has interpreted a complaint's "face" to include public records and materials that the complaint embraces, as well as materials attached to the complaint. *See, e.g.*, *C.H. Robinson Worldwide, Inc. v. Lobrano*, 695 F.3d 758, 764 (8th Cir. 2012) (quoting cases); *Stahl v. U.S. Dep't of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003) (citing *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 802-03 (8th Cir. 2002)).

## III.    ANALYSIS—MOTION TO DISMISS

Defendants argue that the Court should dismiss the Amended Complaint. Specifically, Defendants argue that Mount's equitable claims for injunctive and declaratory relief related to FCI Sandstone's mailroom policies and conduct are moot since Mount is no longer confined there; that his claims for monetary relief against the official-capacity Defendants are barred by sovereign immunity; and that his claims for monetary relief are not available against the personal-capacity Defendants under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), as *Bivens* has not been

extended to the violations alleged under the Amended Complaint. (Dkt. 109 at 1.)[1] The

Court addresses these arguments in turn.

## A.    Declaratory and Injunctive Relief

Defendants argue that because Mount is no longer an inmate at FCI Sandstone, his

requests for injunctive and declaratory relief related to the mailroom are moot under Rule

12(b)(1). (Dkt. 109 at 4.) Mount does not appear to dispute this argument. (Dkt. 124 at

3; Dkt. 129 at 2;[2] *see also* Dkt. 57.)

"'Article III of the United States Constitution limits the jurisdiction of the federal

courts to actual, ongoing cases and controversies.'" *Ali v. Cangemi*, 419 F.3d 722, 723

(8th Cir. 2005) (quoting *Haden v. Pelofsky*, 212 F.3d 466, 469 (8th Cir. 2000)). "Article

III mootness divests the Court of subject matter jurisdiction." *Ahmed v. Sessions*, Case

No. 16-cv-02124 (DSD/HB), 2017 WL 3267738, at *2 (D. Minn. July 11, 2017). A

Court may consider matters outside the pleadings in a factual attack on subject matter

jurisdiction when deciding whether a live controversy exists. *See Davis v. Anthony, Inc.*,

886 F.3d 674, 677, 679 (8th Cir. 2018). The Eighth Circuit has held that "[p]laintiffs

---

[1]    Unless stated otherwise, page citations in this Report and Recommendation refer
to the page numbers assigned by CM/ECF.

[2]    The Court notes that in his Motion for Partial Summary Judgment on Damages,
Plaintiff argued that the Supreme Court has held that a claim does not become moot
merely because an inmate is transferred to another facility. (Dkt. 117 at 2 (citing *Boag v.
MacDougall*, 454 U.S. 364 (1982) (per curium)). However, as far as this Court can
discern, Plaintiff is making this argument only with respect to his request for damages, as
framed by the Motion. In any event, the *Boag* case is inapplicable to injunctive and
declaratory relief because the decision only references mootness with respect to a claim
for monetary damages. *See Boag*, 454 U.S. at 364.

seeking prospective relief based on past actions must show 'a real and immediate threat that they would again suffer similar injury in the future.'" *Mitchell v. Dakota Cty. Soc. Servs.*, 959 F.3d 887, 896 (8th Cir. 2020)) (quoting *Mosby v. Ligon*, 418 F.3d 927, 933 (8th Cir. 2005)) (cleaned up); *see also Lambros v. United States*, No. 19-CV-1870 (MJD/ECW), 2020 WL 5505909, at *8 (D. Minn. July 20, 2020), *R. & R. adopted*, No. 19-CV-1870 MJD/ECW, 2020 WL 5500421 (D. Minn. Sept. 11, 2020), *aff'd*, 850 F. App'x 464 (8th Cir. 2021) (applying the same to a *Bivens* action). Declaratory relief is also a form of prospective relief. *See Los Angeles Cty., Cal. v. Humphries*, 562 U.S. 29, 31 (2010).

There is no dispute that Mount is no longer at FCI Sandstone, and thus no longer subject to the alleged illegal mail policies and conduct by Defendants. As such, the Court finds that the request for declaratory relief or any request for injunctive relief is moot[3] and any such request for relief or judgment should be dismissed without prejudice.[4] *See*

---

[3]     The Court notes that none of the exceptions to the mootness doctrine apply here. *See Ahmed*, 2017 WL 3267738, at *2-3 (listing four exceptions to the mootness doctrine, including that (1) secondary or "collateral" injuries survive after resolution of the primary injury; (2) the issue is deemed a wrong capable of repetition yet evading review; (3) the defendant voluntarily ceases an allegedly illegal practice but is free to resume it at any time; or (4) it is a properly certified class action suit.); *see also Ireland v. Anderson*, No. 3:13-CV-3, 2016 WL 7324102, at *2 (D.N.D. July 5, 2016) (citation omitted).

[4]     Because the Court recommends dismissal of this case based on a lack of subject matter jurisdiction, the Court recommends that the claim be dismissed without prejudice. *See Jenkins v. Bowker*, No. 19-cv-1051 (NEB/LIB), 2019 WL 2931581, at *2 (D. Minn. June 4, 2019), *R. & R. adopted*, 2019 WL 2921796 (D. Minn. July 8, 2019); *see also Romero v. Pinnacle Equities, LLC*, 283 F. App'x 429, 431 (8th Cir. 2008) (citation omitted) (modifying dismissal for lack of subject matter jurisdiction to be without prejudice).

*Senty-Haugen v. Goodno*, 462 F.3d 876, 889 (8th Cir. 2006) (holding that a prisoner's claims for injunctive and declaratory relief related to the conditions of his imprisonment while in isolation were moot after the prisoner's period of isolation ended); *see also Reichling v. Best,* No. 22-2366, 2022 WL 12165683, at *1 (8th Cir. Oct. 21, 2022) ("Because, as Reichling concedes in his pro se brief, his transfer to another prison during the pendency of his action mooted his request for injunctive relief, we lack jurisdiction."); *Scher v. Chief Postal Inspector*, 973 F.2d 682, 683 (8th Cir. 1992) (per curium) (citations omitted) (holding that a former inmate's request for declaratory and injunctive relief under *Bivens* with respect to the handling of mail was moot because the inmate was no longer in prison); *Lambros*, 2020 WL 5505909, at *8.

## B.    Section 1983

As a starting point, Defendants argue that Mount's claims under 42 U.S.C. § 1983 are not actionable in this case, as Section 1983 is only applicable to state actors, and the allegations against them pertain to their actions under federal law.  (Dkt. 109.)  "Section 1983 does not confer subject matter jurisdiction.  The statute simply provides a means through which a claimant may seek a remedy in federal court for a constitutional tort when one is aggrieved by the act of a person acting under color of state law." *Jones v. United States*, 16 F.3d 979, 981 (8th Cir. 1994).  "[T]he statute is inapplicable when a person acts under color of federal law." *Id.*  Accordingly, Mount fails to state a claim against the Defendants under the Civil Rights Act.  *See id.* (affirming Rule 12(b)(1) dismissal of claims against federal actors under Section 1983); *see also Schutterle v. United States*, 74 F.3d 846, 848 (8th Cir. 1996) ("Section 1983 claims are unavailable

against the named federal defendants in this suit due to that section's state action requirement.").  The § 1983 claims against Defendants in their official and individual capacities should be dismissed without prejudice for a lack of subject matter jurisdiction.

## C.     *Bivens* Claims

Construing his complaint liberally, Mount brings these claims under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), because these Defendants are federal employees.  "A *Bivens* claim is a cause of action brought directly under the United States Constitution against a federal official acting in his or her individual capacity for violations of constitutionally protected rights."  *Buford v. Runyon*, 160 F.3d 1199, 1203 n.6 (8th Cir. 1998) (emphasis added) (citing *Bivens*, 403 U.S. 388).  The Court will proceed with addressing Mount's *Bivens* claims against Defendants in their official and individual capacities.

### 1.     Official Capacity Claims

While Mount argues that there is no sovereign immunity where constitutional rights are involved (Dkt. 124 at 3-4; Dkt. 129 at 2-3),[5] as a consequence of sovereign immunity, "it is well-settled that *Bivens* actions may be brought against individual defendants only in their personal, rather than official, capacities."  *Hussein v. Sessions*, No. 16-cv-780 (SRN/SER), 2017 WL 1954767, at *3 (D. Minn. May 10, 2017) (citing

---

[5]     The Court notes that none of the cases relied upon by Mount speak to sovereign immunity in the context of official-capacity *Bivens* claims.  *See, e.g.*, *Southern Ahlers v. Rabinowitz*, 684 F.3d 53 (2d Cir. 2012); *Gee v. Pacheco*, 627 F.3d 1178, 1181 (10th Cir. 2010); *Johnson v. Goord*, 445 F.3d 532 (2d Cir. 2006); *Patterson v. City of Utica*, 370 F.3d 322, 326 (2d Cir. 2004); *Davis v. Goord*, 320 F.3d 346, 349 (2d Cir. 2003).

*Buford, supra*); *see also Staszak v. United States*, 847 F. App'x 365, 366 (8th Cir.), *cert. denied*, 142 S. Ct. 381 (2021) ("We also agree that the *Bivens* claims failed. Sovereign immunity barred the *Bivens* claims against the United States, and against Gallardo in her official capacity."); *Hill v. Holinka*, No. 06-cv-4720 (PJS/JJG), 2008 WL 549928, at *2 (D. Minn. Feb. 27, 2008) ("By comparison, a *Bivens* claim does not permit relief against a government employee in an official capacity. The only relief is for damages from the employee in an individual capacity."). "[A] Bivens action cannot be prosecuted against the United States and its agencies because of sovereign immunity." *Buford*, 160 F.3d at 1203 (citation omitted); *see also Laswell v. Brown*, 683 F.2d 261, 268 (8th Cir. 1982) ("*Bivens* and its progeny do not waive sovereign immunity for actions against the United States. . . ."). Thus, Mount's *Bivens* claims for money relief against Defendants in their official capacities are denied without prejudice. *See Roth v. United States*, 476 F. App'x 95, 95 (8th Cir. 2012) (per curiam) (also noting that sovereign immunity is jurisdictional in nature); *Murray v. United States*, 686 F.2d 1320, 1327 n.14 (8th Cir. 1982) (affirming the dismissal of claims without prejudice because, "[w]here a motion to dismiss for lack of subject matter jurisdiction is granted on grounds of sovereign immunity, the court is left without power to render judgment on the merits of the case") (citations omitted); *Martinez v. Bureau of Prisons,* Case No. 15-cv-2636 (WMW/TNL), 2017 WL 2269498, at *2 (D. Minn. May 23, 2017) (citing *Hart v. United States*, 630 F.3d 1085, 1091 (8th Cir. 2011)) (explaining that dismissal for lack of subject matter jurisdiction in a *Bivens* action based on sovereign immunity must be without prejudice).

2.      **Individual Capacity Claims**

Defendants argue that Mount's *Bivens* claim against them in their individual capacities as alleged in the Amended Complaint fails to state a claim for relief because the Supreme Court has not extended *Bivens* claims to those dealing with the interference with inmate's mail.  (Dkt. 109 at 7-9.)  "'*Bivens* established that the victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right.'" *Hartman v. Moore*, 547 U.S. 250, 255 n.2 (2006) (quoting *Carlson v. Green*, 446 U.S. 14, 18 (1980)); *see also Buford*, 160 F.3d at 1203 n.6 (citation omitted) ("A *Bivens* claim is a cause of action brought directly under the United States Constitution against a federal official acting in his or her individual capacity for violations of constitutionally protected rights.").

The Supreme Court has recently made it clear that expansion of *Bivens* is "a disfavored judicial activity and [has] gone so far as to observe that if the Court's three *Bivens* cases had been decided today, it is doubtful that we would have reached the same result.  And for almost 40 years, we have consistently rebuffed requests to add to the claims allowed under *Bivens*." *Hernandez v. Mesa*, 140 S. Ct. 735, 742-43 (2020) (cleaned up); *see also Egbert v. Boule*, 142 S. Ct. 1793, 1803 (2022) (same) (citation omitted).

The Supreme Court has previously recognized *Bivens* claims brought for excessive force in violation of the Fourth Amendment dealing with a warrantless search and illegal arrest, *see Bivens*, 403 U.S. at 388; workplace discrimination on the basis of sex in

14

violation of the procedural due process of the Fifth Amendment, *see Davis v. Passman*, 442 U.S. 228 (1979); and deliberate indifference to a serious medical need in violation of the prohibition against cruel and unusual punishment under the Eighth Amendment, *see Carlson*, 446 U.S. at 14. *See also Ahmed v. Weyker*, 984 F.3d 564, 567 (8th Cir. 2020) ("On only three occasions has the Supreme Court recognized a cause of action under *Bivens*.") (cleaned up).

Given the presumption against extending the reach of *Bivens*, the Supreme Court and Eighth Circuit have adopted a two-part test with respect to whether an implied cause of action is available under *Bivens*:

> First, we ask whether the case presents "a new *Bivens* context"—i.e., is it "meaningful[ly]" different from the three cases in which the Court has implied a damages action. *Ziglar*, 582 U. S., at ——, 137 S.Ct., at 1859-1860. Second, if a claim arises in a new context, a *Bivens* remedy is unavailable if there are "special factors" indicating that the Judiciary is at least arguably less equipped than Congress to "weigh the costs and benefits of allowing a damages action to proceed." *Ziglar*, 582 U. S., at ——, 137 S.Ct., at 1858 (internal quotation marks omitted). If there is even a single "reason to pause before applying *Bivens* in a new context," a court may not recognize a *Bivens* remedy.

*Egbert*, 142 S. Ct. at 1803 (citation omitted); *see also Ahmed*, 984 F.3d at 567-68 (citations omitted) (quoting *Farah v. Weyker,* 926 F.3d 492, 498 (8th Cir. 2019)) (citation omitted). The Supreme Court went on to further explain this analysis: "While our cases describe two steps, those steps often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy. For example, we have explained that a new context arises when there are 'potential special factors that previous *Bivens* cases did not consider.'" *Id.* (citation omitted).

As to the first step, in looking at whether the present case "is different in a meaningful way," the "relevant differences can include, among other things, 'the sorts of actions being challenged, the mechanism of injury, and the kinds of proof those injuries would require.'" *Ahmed*, 984 F.3d at 568 (quoting *Farah*, 925 F.3d at 500). Even small differences can be "meaningful." *Id.* (citations omitted).

The Court finds that the actions and mechanism of injury alleged here are different than those recognized by the Supreme Court. Multiple courts within this District have concluded that the Supreme Court has not recognized an implied cause of action for a violation of the First Amendment. *See*, *generally*, *Gregg v. Basile*, No. 21-CV-2767 (WMW/TNL), 2023 WL 1786261, at *2 (D. Minn. Jan. 11, 2023) (collecting cases), *R. & R. adopted*, 2023 WL 1785608 (D. Minn. Feb. 6, 2023). Indeed, the Supreme Court has recently reiterated that "'[w]e have never held that *Bivens* extends to First Amendment claims[.]'" *Egbert*, 142 S. Ct. at 1807 (quoting *Reichle v. Howards*, 566 U.S. 658, 663, n.4 (2012)).

The only *Bivens* action under the Fifth Amendment recognized by the Supreme Court was in *Davis*, *supra*. In *Davis*, the Court held that the Fifth Amendment provided a damages remedy for a claim of gender discrimination, allowing the administrative assistant of a Congressman to sue her former employer after she was fired because she was a woman. *See* 442 U.S. at 230-48. The *Davis* Court noted that the Congressman's recent electoral defeat meant that "equitable relief in the form of reinstatement would be unavailing," and that the federal courts were well-equipped to evaluate the plaintiff's gender discrimination claim. *Id.* at 245. However, with respect to the Due Process

16

Clause, the Court considered an implied cause of action under the Fifth Amendment as
the "Due Process Clause of the Fifth Amendment forbids the Federal Government to
deny equal protection of the laws." *Id.* at 234. Here, not only is Plaintiff not asserting
gender discrimination, but his claims with respect to due process do not involve equal
protection. Given that the Supreme Court has not recognized a *Bivens* action dealing
with prisoner mail on procedural or substantive due process grounds, Plaintiff's claims
would require extending *Bivens* to a new context. *See Brown v. Cooper*, No. CV 18-219
(DSD/BRT), 2018 WL 6977594, at *12 (D. Minn. Dec. 11, 2018) ("In *Davis*, the
Supreme Court recognized a *Bivens* remedy for a Fifth Amendment equal protection
claim, but that case involved discrimination in an employment setting, not a correctional
setting. While the claims may have some parallels, 'even a modest extension is still an
extension.'") (quoting *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1864 (2017)), *R. & R. adopted*,
2019 WL 121943 (D. Minn. Jan. 7, 2019), *aff'd in relevant part as modified*, 787 F.
App'x 366 (8th Cir. 2019).

As to the second step, "[t]he focus is on whether there are any special factors that
cause us to pause before acting without express congressional authorization. It does not
take much, because Congress is usually in the better position to weigh the costs and
benefits of creating a new substantive legal liability." *Ahmed*, 984 F.3d at 570 (cleaned
up); *see also Egbert*, 142 S. Ct. at 180. Here, special factors counsel against extending
*Bivens* to Plaintiff's First Amendment and due process claims relating to his prison mail.
First, Congress has already legislated extensively with respect to prisoners' rights under
the Prison Litigation Reform Act, and "legislative action suggesting that Congress does

17

not want a damages remedy is itself a factor counseling hesitation." *Ziglar*, 137 S. Ct. at 1865; *see also Brown*, 2018 WL 6977594, at *12 (citation omitted) ("Prisoner civil rights litigation, moreover, is heavily regulated by Congress, counseling hesitation in the expansion of remedies available to prisoners.").

These factors also include whether a *Bivens* claim would interfere with the functioning of the executive branch and whether other remedies exist to deal with the injures alleged by Plaintiff. *Ahmed*, 984 F.3d at 570-71; *see also Ziglar*, 137 S. Ct. at 1848 ("[A]n alternative remedial structure . . . alone may limit the power of the Judiciary to infer a new *Bivens* cause of action."). Courts in this district have concluded that if *Bivens* claims were permitted to be extended in the context of the BOP's actions, then "BOP officials faced with the expanded possibility of personal liability may act differently . . . when dealing with [individuals] in BOP custody." *Biron v. Sawyer*, No. 19-CV-2938 (SRN/LIB), 2020 WL 6121270, at *15 (D. Minn. Aug. 21, 2020) (citation omitted), *R.&R. adopted sub nom.*, 2020 WL 5812970 (D. Minn. Sept. 30, 2020). This concern has also been raised with respect to First Amendment and due process claims regarding interference with mail in the prison setting. *See, e.g.*, *Smadi v. True*, No. 18-CV-02149-JPG, 2021 WL 2853262, at *4 (S.D. Ill. July 8, 2021) (string citation omitted) ("Prison officials concerned with personal liability for constitutional deprivations are less capable of making the discretionary decisions that are frequently demanded of them when dealing with the inmate population for fear of becoming embroiled in extended litigation over claims of retaliation, which can be easily fabricated. Litigation over these issues could prevent individual defendants from properly and expeditiously carrying out their

duties for fear of personal liability."); *Railey v. Ebbert*, 407 F. Supp. 3d 510, 522-23 (M.D. Pa. 2019) (collecting cases) ("Moreover, as other courts have recognized, special factors exist counseling against the expansion of Bivens to First Amendment claims regarding interference with mail, such as Congress' decision to not provide a damages remedy for certain violations and the financial burden on federal agencies resulting from litigation.") (also applying this reasoning to the due process claim).

Further cautioning against an extension of *Bivens* to the claims in the Amended Complaint is the fact that other remedies exist to deal with the harms alleged by Mount. Indeed, as set forth above, the Supreme Court commands consideration of whether alternative remedies are available. *See Egbert*, 142 S. Ct. at 1807. Inmates whose First Amendment and due process interests are harmed in federal prison with respect to access to mail can seek relief under the BOP Administrative Remedy Program. *See* 28 C.F.R. §§ 542.10-542.19. Indeed, "[t]he purpose of the [BOP] Administrative Remedy Program is to allow an inmate to seek formal review of an issue relating to any aspect of his/her own confinement." *See* 28 C.F.R. § 542.10(a); *see also Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001) ("Inmates in respondent's position also have full access to remedial mechanisms established by the BOP, including suits in federal court for injunctive relief—long recognized as the proper means for preventing entities from acting unconstitutionally—and grievances filed through the BOP's Administrative Remedy Program."). The availability of such remedies is a "'convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages.'" *Hardy v. Bureau of Prisons*, No. CV 18-794 (DSD/BRT), 2019 WL 3085963, at *3 (D. Minn. June

10, 2019) (quoting *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007)), *R. & R. adopte*d, 2019 WL 3080916 (D. Minn. July 15, 2019).

The Court acknowledges that Mount contends that Defendants failed to abide by the BOP's mail policies as set forth in BOP Program Statement 5266.11 and what appears to be 28 C.F.R. §§ 540.20-25, 540.70-72.  (*See*, *e.g.*, Dkt. 78 ¶¶ 14-18.) However, as one Court has found:

> To the extent he focuses on each BOP official's conduct in carrying out these policies, the Court finds that these claims could still call into question the formulation and implementation of the BOP's mail and CMU policies. The Court's inquiry into these policies may, in turn, interfere with the Executive Branch, which operates the BOP. The expansion of this implied damages remedy to include First Amendment claims will also interfere with the execution of official action. Prison administrators are in the best position to make decisions regarding matters of institutional security, and this includes restrictions placed on inmate communications. Courts generally stay out of such matters.

*Smadi v. True*, No. 18-CV-02149-JPG, 2021 WL 2853262, at *4 (S.D. Ill. July 8, 2021) (citing *Bell v. Wolfish*, 441 U.S. 520, at 547-48, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)).

Moreover, Plaintiff admits in his Amended Complaint that he properly used the prison grievance process, but that Warden Fikes, the BOP Regional, and the Central Office failed to address his issues.  (Dkt. 78 ¶¶ 16, 30.)  In other words, Plaintiff availed himself of the BOP Administrative Remedy Program under 28 C.F.R. §§ 542.10-542.19. The fact that Mount's administrative remedies were not successful does not mean that such a process does not exist as an alternative remedy.  *See Malesko*, 534 U.S. at 69 (noting that "[s]o long as the plaintiff had an avenue for some redress, bedrock principles of separation of powers foreclosed judicial imposition of a new substantive liability").

The Court finds that alternative remedies in the form of the grievance process and the ability to seek injunctive relief counsels against expanding *Bivens* to Mount's mail related claims.  *See Hardy,* 2019 WL 3085963, at *3 (First Amendment claim); *see also Dockery v. Baltazar*, No. 4:20-CV-01676, 2021 WL 2014969, at *3 (M.D. Pa. May 19, 2021) ("I join other courts that considered the issue in concluding the BOP's Administrative Remedy Program provides an alternative process.  Significantly, the fact that Dockery was unsuccessful in utilizing the administrative process does not mean that such a process does not exist as an alternative remedy.")*; White v. True,* No. 19-CV-0418-JPG, 2019 WL 3074528, at *3 (S.D. Ill. July 15, 2019) (dealing with mail related claims and finding: "Plaintiff has access to alternative remedies through the BOP's administrative remedies program.  As such, the Court declines to extend *Bivens* to Plaintiff's due process claim.")*; Railey*, 407 F. Supp. 3d at 521-23 ("[T]he existence of these alternative remedies, as well as these special factors, counsel against expanding Bivens to encompass Railey's First Amendment claim regarding interference with and destruction of his mail."); *Cox v. True*, No. 3:17-CV-338-JPG-DGW, 2018 WL 6928796, at *4-5 (S.D. Ill. Sept. 20, 2018), *R. & R. adopted*, 2019 WL 95478 (S.D. Ill. Jan. 3, 2019); *Stratman v. Morris*, No. 112CV01837DADSABPC, 2018 WL 3388406 at *4 (E.D. Cal. July 10, 2018) (prison mail related claim); *Howard v. Lackey*, No. CV 7:16-129-KKC, 2018 WL 1157547, at *3 (E.D. Ky. Mar. 5, 2018).

Given the consideration of the special factors as a whole, the Court finds that extending the *Bivens* remedy to the Amended Complaint is not appropriate and as a consequence, the Amended Complaint fails to state a claim for relief with respect to

monetary damages against Defendants in their individual capacities.[6] Therefore,

Defendants' Rule 12(b)(6) Motion to Dismiss should be granted and Plaintiff's *Bivens*

claims for monetary damages against Defendants in their individual capacities be

dismissed with prejudice.

## IV.    ANALYSIS—PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND MOTION FOR EXTENSION

Since the Court has recommended dismissal of the Amended Complaint, it

concludes that Plaintiff Jeremy D. Mount's Motion for Partial Summary Judgment on

Damages (Dkt. 117) and Plaintiff's Motion for Extension of Time to Seek "Offer of

Compromise" Resolution Where Both Parties are Willing (Dkt. 121) should be denied as

moot.

The Court notes that in any event, summary judgment is premature, as discovery

has not even commenced.[7] *See Gilmore v. Martin Cty. Sheriff Dep't,* No. 19-CV-0141

(WMW/ECW), 2019 WL 3878090, at *4 (D. Minn. July 12, 2019) ("[N]o party has yet

had a meaningful opportunity to conduct pre-trial discovery. Because there may be

material questions of fact with respect to any claims, it would be premature for the Court

---

[6]    The Court also notes that with respect to Plaintiff's complaints regarding his access to the courts, he has not alleged any actual injury to his ability to prosecute any claims.

[7]    The Court also does not reach any decision regarding Plaintiff's claim in his Motion for Summary Judgment that Defendants are in violation of 18. U.S.C. § 1708, as it was not specifically alleged as basis for relief in the Amended Complaint. The Court notes that at least one court within this District has found that "that § 1708 does not give rise to a private right of action. . . ." *Hussein v. Sessions*, No. 16-CV-780 (SRN/SER), 2017 WL 1954767, at *5 (D. Minn. May 10, 2017), *aff'd*, 715 F. App'x 585 (8th Cir. 2018).

22

to entertain Gilmore's motions for summary judgment."), *R. & R. adopted*, No. 19-CV-0141 (WMW/ECW), 2019 WL 3859516 (D. Minn. Aug. 16, 2019).  Further, the parties are always free to reach a settlement, but given the procedural posture of this case, no extension of time for settlement discussions is warranted.

## V.    RECOMMENDATION

Based on the above, and on the files, records, and proceedings herein, **IT IS RECOMMENDED** that:

1.    Defendants' Motion to Dismiss (Dkt. 108) be **GRANTED**;

2.    Plaintiff Jeremy D. Mount's Motion for Partial Summary Judgment on Damages (Dkt. 117) be **DENIED** as moot;

3.    Plaintiff Jeremy D. Mount's Motion for Extension of Time to Seek "Offer of Compromise" Resolution Where Both Parties are Willing (Dkt. 121) be **DENIED** as moot;

4.    The Amended Complaint be dismissed **WITHOUT PREJUDICE** as to Plaintiff's requests for declaratory relief, injunctive relief, monetary relief against Defendants in their official capacities, and relief against Defendants under 42 U.S.C. §1983; and

5.    This Action be dismissed **WITH PREJUDICE** as to the claims under *Bivens* for monetary relief against Defendants in their individual capacities.

DATED: April 4, 2023                    *s/ Elizabeth Cowan Wright*
                                        ELIZABETH COWAN WRIGHT
                                        United States Magistrate Judge

**NOTICE**

This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under District of Minnesota Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections. D. Minn. LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set for in D. Minn. LR 72.2(c).