UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| JEREMY D. MOUNT, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WARDEN J. FIKES, individually and in his official capacity as Warden of FCI Sandstone of PINE County; D. DRILLING, individually and in his official capacities as correctional officer for the mail room of FCI-Sandstone PINE County; and J. BEST, individually and in his official capacities as Correctional Officer of FCI-Sandstone Mail Room of PINE County,<br><br>Defendants. | Case No. 21-CV-1489 (NEB/ECW)<br><br><br><br>ORDER ACCEPTING REPORT AND RECOMMENDATION |

*Pro se* plaintiff Jeremy D. Mount sued several defendants over constitutional violations in connection with mailroom practices at the Federal Correctional Institution in Sandstone, Minnesota ("FCI-Sandstone"). Defendants, who work at the Sandstone facility, moved to dismiss. (ECF No. 108.) Mount moved for partial summary judgment and for an extension of time to seek settlement or resolution. (ECF Nos. 117, 121.) In a

Report and Recommendation, United States Magistrate Judge Elizabeth Cowan Wright recommends granting Defendants' motion to dismiss and denying Mount's motions as moot. (ECF No. 131 ("R&R").) Mount objects to the R&R. (ECF No. 132 ("Obj.").) For the reasons explained below, the Court overrules the objection, accepts the R&R, grants the motion to dismiss, and denies the remaining motions as moot.

## BACKGROUND

The R&R provides a thorough factual background of this case. (R&R at 1–4.) Mount does not object to the factual summary in the R&R. Rather, he objects to the legal conclusions to be drawn from those facts. The Court therefore incorporates the R&R's findings of fact and restates a summary below.

Mount filed his amended complaint while at FCI-Sandstone. (ECF No. 78 ("Am. Compl.") ¶ 8.) At the time J. Fikes was the warden at the facility and D. Drilling and J. Best worked in the mailroom (collectively "Defendants"). (*Id.* ¶¶ 11–13.) Mount sued Defendants for their failure to follow Federal Bureau of Prisons ("BOP") policy for mail he received while at Sandstone. (*Id.* ¶¶ 14–15.) Mount requested declaratory and injunctive relief to address the policies and practices challenged with his suit. (*Id.* at 8–9.) He also sought damages from Defendants. (*See id.* at 9.) According to the last Notice of Change of Address from Mount, (ECF No. 115), and the Bureau of Prisons' inmate locator, Mount no longer resides at the Sandstone facility. *BOP Inmate Locator*, https://www.bop.gov/inmateloc// (last visited August 2, 2023).

2

## ANALYSIS

I.  **Declaratory and Injunctive Relief and 1983 Claims**

Defendants bring their motion to dismiss under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 108.) After determining Mount's declaratory and injunctive relief claims were moot because he was no longer an inmate at FCI-Sandstone, the R&R recommended dismissal of those remedies without prejudice. (R&R at 9–10.) The R&R also concluded that Mount's Section 1983 claims were not actionable because he sued federal, and not state, actors. (*Id.* at 11–12 (citing *Jones v. United States*, 16 F.3d 979, 981 (8th Cir. 1994).)

*Declaratory and Injunctive Relief.* Mount does not object to the R&R's recommended dismissal of declaratory and injunctive relief. Because no party objects to that determination, the Court reviews that recommendation for clear error and finds none. *See* Fed. R. Civ. P. 72(b); *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (per curiam). The R&R correctly recommends dismissing Mount's injunctive and declaratory relief claims because federal courts "do not have jurisdiction over cases in which due to the passage of time or a change in circumstance, the issues presented . . . will no longer be live or the parties will no longer have a legally cognizable interest in the outcome of the litigation." *Nat'l Right to Life Pol. Action Comm. v. Connor*, 323 F.3d 684, 691 (8th Cir. 2003) (quotation marks and citation omitted). Mount no longer resides at FCI-Sandstone, therefore his claims for declaratory and injunctive relief are moot.

*Section 1983 Claims.* Neither does Mount object to the R&R's conclusion that the Court lacks subject-matter jurisdiction over his Section 1983 claims. The R&R contains no clear error in assessing these claims: Section 1983 is inapplicable when a defendant acts under the color of federal law, and so Mount fails to state a claim against Defendants.

## II.   *Bivens* Claims

Construing Mount's complaint liberally, the R&R proceeded with its analysis of Mount's Section 1983 claims under *Bivens*. (R&R at 12 (citing 403 U.S. 388 (1971)).) Ultimately, the R&R recommended dismissal of Mount's *Bivens* claims. (*Id.* at 12–13 (official-capacity claims); *id.* at 14–22 (individual-capacity claims).) Mount objects to the R&R's conclusion about Defendants' entitlement to sovereign immunity. (Obj. at 2–3.) The Court reviews Mount's objections *de novo*.

*Official-Capacity Claims.* Mount's claims against Fikes, Drilling, and Best in their official capacities are barred by sovereign immunity. The Eleventh Amendment bars claims for damages against state officials in their official capacities because courts treat such suits as suits against the state, not the individual. *Kruger v. Nebraska*, 820 F.3d 295, 301 (8th Cir. 2016). Similarly, a *Bivens* action against federal agents in their official capacities is not actionable under sovereign immunity. *Buford v. Runyon*, 160 F.3d 1199, 1203 (8th Cir. 1998). Defendants are entitled to sovereign immunity unless the state has waived that immunity or Congress has enacted a statute allowing such suits. *Edelman v. Jordan*, 415 U.S. 651, 673 (1971) (waiver); *Becker v. Univ. of Neb. at Omaha*, 191 F.3d 904, 908

4

(8th Cir. 1999) (congressional enactment). The Court finds no basis to conclude that Defendants waived their sovereign immunity. And Mount does not allege that Congress has enacted a statute allowing suits like the one it brings. Thus, the official-capacity claims are barred.

*Individual-Capacity Claims.* Although *Bivens* provides plaintiffs a path to recover damages against federal officials in their individual capacities, this avenue is limited, and it does not extend to claims addressing alleged interference with an inmate's mail. To determine whether plaintiffs may proceed under *Bivens*, the Supreme Court has adopted a two-part test.

> First, we ask whether the case presents "a new *Bivens* context"—i.e., is it "meaningfully" different from the three cases in which the Court has implied a damages action. Second, if a claim arises in a new context, a *Bivens* remedy is unavailable if there are "special factors" indicating that the Judiciary is at least arguably less equipped than Congress to "weigh the costs and benefits of allowing a damages action to proceed."

*Egbert v. Boule*, 142 S. Ct. 1793, 1803 (2022) (cleaned up, citations omitted). These two steps "often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Id.* The Supreme Court has emphasized that the expansion of *Bivens* is "a disfavored judicial activity," and courts should be mindful to not extend *Bivens* too far. *Hernandez v. Mesa*, 140 S. Ct. 735, 742–43 (2020) (quotation marks omitted). The Court explained that "if there is even a single reason to pause before applying *Bivens* in a new context, a court may not recognize a *Bivens* remedy." *Egbert*, 142 S. Ct. at 1803 (cleaned up, citations omitted).

5

The Supreme Court has recognized a *Bivens* claim in three cases: (1) excessive force used during a warrantless search and arrest in violation of the Fourth Amendment, *see Bivens*, 403 U.S. at 389; (2) gender-based workplace discrimination in violation of the Fifth Amendment right to due process, *see Davis v. Passman*, 442 U.S. 228, 248 (1979); (3) and deliberate indifference to a serious medical need under the Eighth Amendment, *see Carlson v. Green*, 446 U.S. 14, 24 (1980). To determine whether Mount's claims are meaningfully different from the three prior cases, the "relevant differences can include, among other things, 'the sorts of actions being challenged, the mechanism of injury, and the kinds of proof those injuries would require.'" *Ahmed v. Weyker*, 984 F.3d 564, 568 (2020) (citation omitted).

Here differences outweigh similarities. Mount raises his claims under the First and Fifth Amendments for censorship of his mailings and frustration of his right to access the courts. (Am. Compl. at 1, 8–9.) None of the prior cases involved the First Amendment. In *Egbert*, in fact, the Supreme Court noted that the Court has never extended *Bivens* to include the First Amendment. 142 S. Ct. at 1807. Applying *Bivens* to Mount's First Amendment claim would require extending *Bivens* to a new context. The same is true for Mount's *Bivens* claim under the Fifth Amendment. Although *Davis* also involves a violation under the Fifth Amendment, there are notable differences. Unlike the claim in *Davis*, Mount is not asserting that he faces gender discrimination. Instead, Mount asserts that Defendants violated his "due process rights to the access to the free flow of incoming

6

and out going [sic] mail." (Am. Comp. ¶ 1.) Mount also does not invoke an equal protection claim, as was the case in *Davis*. Based on these substantive differences, the Court concludes that Mount's Fifth Amendment claim would also require extending *Bivens* to a new context. *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1859 (2017) ("If the case is different in a meaningful way from previous *Bivens* cases decided by this Court, then the context is new.")

Under the second prong of the test, this Court considers whether "any special factors counsel hesitation" before extending a new *Bivens* cause of action. *Farah v. Weyker*, 926 F.3d 492, 498 (8th Cir. 2019) (cleaned up, citation omitted). "Only if we are confident that the Judiciary is well suited to consider and weigh the costs and benefits of allowing a damages action will we take it upon ourselves to do so." *Id.* at 498 (cleaned up, citation omitted.) The R&R lists three special factors weighing against extending *Bivens* to Mount's case, including the fact that: (1) Congress has already enacted the Prison Litigation Reform Act ("PLRA") to regulate prisoners' rights; (2) extending *Bivens* in Mount's case would interfere with functioning of the executive branch; and (3) there is an alternative, administrative remedy available to address Mount's complaints. (R&R at 17–19.) After a *de novo* review, the Court determines that each of the factors listed in the R&R is a valid justification for the Court's hesitation.

First, prisoner civil-rights litigation is already regulated by Congress, and Congress passed the PLRA to restrain the perceived disruptive tide of frivolous prisoner

litigation. *Woodford v. Ngo*, 548 U.S. 81, 97 (2006). This fact gives the Court pause. *See Ziglar*, 137 S. Ct. at 1865 ("[L]egislative action suggesting that Congress does not want a damages remedy is itself a factor counseling hesitation.").

Second, extending *Bivens* would interfere with the functioning of the executive branch—another valid justification for this Court's hesitation. *See Farah*, 926 F.3d at 500 (noting the Supreme Court has identified one of the special factors to be burdening and interfering with executive-branch functions). Granting a *Bivens* claim in Mount's case would expand BOP officials' personal liability, and faced with this expanded possibility of litigation, BOP officials may act differently when dealing with inmates in custody. *See Biron v. Sawyer*, No. 19-CV-2938 (SRN/LIB), 2020 WL 6121270, at *15 (D. Minn. Aug. 21, 2020) (reasoning similarly).

Finally, a remedial structure is already in place to address Mount's complaints. Inmates whose First Amendment and due process interests are harmed in federal prison because of mailroom practices may seek relief under the BOP Administrative Remedy Program. *See* 28 C.F.R. §§ 542.10–542.19. Because there is an alternative remedial structure in place, "that alone, like any special factor, is reason enough to limit the power of the Judiciary to infer a new *Bivens* cause of action." *Egbert*, 142 S. Ct. at 1804 (quotation marks and citation omitted).

The law requires the dismissal of Mount's case. The Court accepts the R&R over Mount's objections.

### III.  Motion for Summary Judgment and Motion for Extension

Mount does not object to the denial of his motion for summary judgment or his motion for an extension. Finding no clear error, the Court accepts the R&R's recommendation and denies the motions.

### CONCLUSION

Based on the foregoing and on all the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. The Report and Recommendation (ECF No. 131) is ACCEPTED;

2. Defendants' Motion to Dismiss (ECF No. 108) is GRANTED;

3. Plaintiff's Motion for Partial Summary Judgment (ECF No. 117) is DENIED AS MOOT;

4. Plaintiff's Motion for Extension of Time to Seek "Offer of Compromise" Resolution Where Both Parties are Willing (ECF No. 121) is DENIED AS MOOT;

5. The Amended Complaint is DISMISSED WITHOUT PREJUDICE as to Plaintiff's requests for declaratory relief, injunctive relief, and monetary relief against Defendants in their official capacities, and relief against Defendants under 42 U.S.C. Section 1983; and

6. This action is DISMISSED WITH PREJUDICE as to the claims under *Bivens* for monetary relief against Defendants in their individual capacities.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: August 2, 2023 BY THE COURT:

s/Nancy E. Brasel
Nancy E. Brasel
United States District Judge